UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DANIEL GUMNS, MICHAEL VIDEAU, REVON WILEY, IAN CAZENAVE, REGINALD GEORGE, LIONEL TOLBERT, OTTO BARRERA, KENTRELL PARKER MICHAEL ROBINSON, JULIUS ALLEN, ERNEST ROERS, ALFOANSO GARNER, BRADLEY WINTERS, KENDRICK WILSON JAMES HUGHES, on behalf of themselves and all similarly situation individuals<br><br>Versus<br><br>JOHN BEL EDWARDS, in his official capacity as Governor of the State of Louisiana; LOUISIANA DEPARATMENT OF PUBLIC SAFETY & CORRECTIONS; JAMES LeBLANC, in his official capacity as Secretary of the Department of Safety & Corrections; JOHN MORRISON, in his official capacity as Medical Director of the Department of Public Safety & Corrections; LOUISIANA DEPARMENT OF HEALTH; and Stephen R. RUSSO, in his official capacity as Interim Secretary of the Louisiana Department of Health | NO. 3:20-cv-231-SDD-RLB<br><br>CLASS ACTION |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## SUPPLEMENTAL AFFIDAVIT BY TRACY FALGOUT

**BEFORE ME,** the undersigned Notary Public qualified in the aforesaid state and parish, personally came and appeared:

### TRACY FALGOUT

who, after being duly sworn by me, did depose and state:

1. I am providing this Affidavit as a supplement to the one that I executed on or about April 2, 2020 in the matter entitled *Lewis v. Cain*, No. 3:15-cv-00318, United States District Court, Middle District of Louisiana.

1



2. I have been employed by the State of Louisiana Department of Public Safety and Corrections ("DOC") from November 20, 2000 to present. Since August of 2019, I have held the position of Deputy Warden – Operations at Louisiana State Penitentiary ("LSP" or "Angola"). My job duties include administrative oversight of the following departments: Health Services, Legal Programs, Training Academy, Religious Services, ACA, and ADA. I also serve as the facility ADA Coordinator.

3. I have been licensed as a Registered Nurse by the State of Louisiana since December of 1990.

4. In response to the COVID-19 pandemic, DOC has a developed a plan to protect the health and safety of all offenders within the DOC system.

5. LSP is following DOC's Influenza and Pandemic Viral Outbreaks regulation, which, as part of DOC's infection control program, provides a formal policy and procedure framework concerning the planning, preparation, and management of a pandemic viral disease or an influenza outbreak. DOC recognizes that a pandemic or an influenza outbreak may not follow an expected course and may present new challenges. DOC has activated this regulation to the highest level, and DOC facility plans have been customized specifically to address COVID-19.

6. LSP has also implemented its Continuity of Operations Plan ("COOP") and COOP Isolation Plan.

7. LSP's current procedures ensure that proper housing, housekeeping, nutrition, medical care, and sanitation requirements are met, despite the additional challenges to staff and the offender population. As the pandemic situation evolves, LSP staff is prepared to adapt as necessary.

8. LSP is following the guidelines of the United States Centers for Disease Control and Prevention ("CDC").

9. Camp J at LSP is currently being used as an isolation facility to house offenders from local jails in who test positive for COVID-19 and who cannot be safely isolated at the local facilities. Camp J began accepting patients for isolation on or about April 2, 2020. Camp J also serves as an isolation facility for those offenders within the LSP population who test positive and require isolation from the general population at LSP.

10. Offenders housed at local facilities who test positive for COVID-19 are transported to Camp J for isolation, only if they cannot be isolated at the facility in which they are housed. Camp J is an isolated facility and not located near any other offender housing unit at LSP.

11. Camp J is a standalone facility located on LSP's 1800-acre campus. Camp J is located at least a mile away from any other offender occupied buildings located at LSP. Camp J is being operated as independent prison separate and apart from the rest of DOC and LSP as part of DOC's current COVID-19 response plan. During this period, Camp J will not be considered part of Angola.

12. Camp J is being used only as an isolation and monitoring facility. It does not act as a hospital and does not provide treatment to any Covid-19 patients that require ventilators, oxygen, or IV's. Any patients showing serious medical symptoms beyond isolation monitoring are sent to an appropriate outside hospital (typically Our Lady of the Lake Regional Medical Center in Baton Rouge) for any necessary medical care.

13. Prior to the re-occupancy of Camp J, the facility was thoroughly cleaned and equipped to serve as a COVID-19 occupational facility. Additionally, those parts of Camp J that

will house inmates for isolation have been fully climate controlled with central air-conditioning purchased/leased by DOC for these purposes.

14. Camp J is currently operating a two prong isolation plan for inmates isolated there. All initial intakes are housed that the "Bass" unit for early isolation and monitoring. Inmates generally remain at the Bass unit for approximately seven (7) days during which time they are regularly monitored by a staff that include one nurse practitioner and two (2) to three (3) registered nurses. After this initial isolation period, those patients that continue to remain stable and show signs of improvement are moved to the "Gar" unit for "step-down" isolation for approximately an additional seven (7) days. In step down isolation, offenders are monitored daily by medical staff as they continue their recovery. Offenders are then tested after they complete the full 14 day isolation regiment. Those who test negative are then discharged and appropriate transport and placement is determined by DOC headquarters. These offenders are considered recovered upon this negative COVID-19 test result.

15. The above referenced process has worked very well thus far. Nearly all of the patients admitted to Camp J have continued to improve and have not had any serious complications. No one who has been admitted to Camp J has died. Only two offenders who were sent to Camp J have required hospitalization. Both of those offenders were transported to OLOL immediately upon intake because their symptoms were more severe upon intake than those allowed by the Camp J isolation criteria.

16. The offenders and employees assigned to Camp J do not have interaction with other employees or offenders of LSP so as to limit the potential for exposure to COVID-19. Employees assigned to Camp J report directly to that facility daily for work. Healthcare

workers who interact with offenders are given clothing to wear upon reporting for a shift. They change into this clothing, which they wear along with proper Personal Protective Equipment ("PPE"), while in contact with offenders. At the end of a given shift, employees then take a decontamination shower, leave behind the clothing provided so that it can be cleaned and sanitized, and then put on their personal clothing before leaving the facility. This practice has been implemented to take even further precautions to avoid any cross contamination while entering and leaving the facility.

17. Camp J has its own ambulance that has been assigned as the designated transport for those offenders who are transported to or from the facility for COVID-19 isolation.

18. All offenders housed at Camp J are being provided with masks and are being encouraged to use them by staff.

19. I have reviewed the list of plaintiffs named in this suit and the affidavits submitted by the plaintiffs and have confirmed the following facts: (1) Kendrick Wilson is an offender who was transported from East Baton Rouge Parish prison ("EBR") to Camp J on or about April 11, 2020. He has been at Camp J since that date and is currently in the "step-down" unit awaiting full recovery. Thereafter, he will be returned to EBR for continued incarceration; (2) Ernest Rogers has not been transported to or housed at Camp J; (3) Julius Allen has not been transported to or housed at Camp J; (4) Daniel Gumns has not been transported to or housed at Camp J; (5) Ian Cazenave has not been transported to or housed at Camp J. Although they have not submitted affidavits, I have also confirmed that Michael Videau, Trevon Wiley, Reginald George, Lionel Tolbert, Otto Barrera, Kentrell Parker, Alfonso Garner, Bradley Winters and James Hughes have not been transported to or housed at Camp J. Finally, although not listed

as a plaintiff, I have reviewed the status of Paul Nash and have confirmed that he is stable and improving in "step down" isolation and that upon being retested (and receiving a negative result) will be transported back to Bienville Parish where he was housed prior to contracting COVID-19.

20. Additionally, while Camp J plans to continue to accept offenders from local jails, Camp J is no longer accepting offenders from EBR for isolation. Arrangements have been made by EBR officials to manage and maintain their own onsite isolation facility.

21. As the COVID crisis presents new challenges daily, LSP's response continues to evolve, and LSP staff is prepared to adapt as necessary.

22. The foregoing is true to the best of my knowledge, information, and belief.

_____
Tracy Falgout

SWORN TO AND SUBSCRIBED before me, Notary, on the 23 day of April, 2020.

_____
Notary Public
JONATHAN R. VINING
NOTARY PUBLIC
State of Louisiana
LA Bar #30781
My Commission Expires at Death

52388201.v2