UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DANIEL GUMNS, MICHAEL VIDEAU,   *
TREVON WILEY, IAN CAZENAVE,   *
REGINALD GEORGE, LIONEL TOLBERT,   *
OTTO BARRERA, KENTRELL PARKER   *
MICHAEL ROBINSON, JULIUS ALLEN,   *
ERNEST ROGERS, ALFOANSO GARNER,   *
BRADLEY WINTERS, KENDRICK   *
WILSON, JAMES HUGHES, on behalf of   *
themselves and all similarly situated individuals*
　　　　　　　　　　　　　　　　　*   NO. 3:20-cv-231-SDD-RLB
VERSUS   *
　　　　　　　　　　　　　　　　　*
JOHN BEL EDWARDS, in his official   *   CLASS ACTION
capacity as Governor of the State of Louisiana; *
LOUISIANA DEPARTMENT OF PUBLIC   *
SAFETY & CORRECTIONS; JAMES   *
Le BLANC, in his official capacity as   *
Secretary of the Department of Safety &   *
Corrections; JOHN MORRISON, in his   *
official capacity as Medical Director of the   *
Department of Public Safety & Corrections;   *
LOUISIANA DEPARTMENT OF HEALTH;   *
and Stephen R. RUSSO, in his official capacity *
as Interim Secretary of the Louisiana   *
Department of Health   *

## MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY CLASS ACTION

Now come defendants the LOUISIANA DEPARTMENT OF PUBLIC SAFETY

AND CORRECTIONS, JAMES M. LEBLANC, Secretary of the Louisiana Department of

Public Safety and Corrections, and DR. JOHN MORRISON, in his official capacity as

Medical Director of the Department of Public Safety & Corrections (collectively the "**DOC**

**Defendants**") who, file this opposition to the motion for class certification [R. Doc. 25.]

(the "**Motion**") filed by plaintiffs Daniel Gumns, Michael Videau, Trevon Wiley, Ian

Cazenave, Reginald George, Lionel Tolbert, Otto Barrera, Kentrell Parker, Michael

Robinson, Julius Allen, Ernest Rogers, Alfoanso Garner, Bradley Winters, Kendrick Wilson, and James Hughes (the "**Plaintiffs**"). The Plaintiffs seek to certify a class of "tens of thousands of individuals" that they claim will be harmed by the DOC Defendants' COVID-19 response plan.  For the reasons more fully set forth herein, the Motion should be denied.

## I.    RELEVANT FACTUAL BACKGROUND

The instant matter is a putative class action, the allegations of which revolve around the DOC Defendants' response to COVID-19.  In short, the Plaintiffs allege that offenders, system-wide, have been subjected to violations of the Eighth Amendment and Fourteenth Amendment as a result of the alleged actions or inactions of the Defendants related to COVID-19.

The Plaintiffs seek to define their class and subclasses as follows:

All prisoners and pretrial detainees who are, or will in the future be, subjected to Defendants' COVID-19 policies, practices, and omissions.

Subclass I: All incarcerated individuals who are, or will in the future be, subjected to Defendants' COVID-19 policies, practices, and omissions.

Subclass II: All individuals being held in pre-trial detention who are, or will in the future be, subjected Defendants' COVID-19 policies, practices, and omissions.

[R. Doc. 25 at 2.]

Plaintiffs have brought this action even though the Defendants prepared proactively early in the development of the global pandemic, the Governor declared a public health emergency to respond to COVID-19, and the Defendants have implemented and executed an effective response that complies with CDC guidelines.  [*See* the evidence adduced at the April 30, 2020 hearing and R. Doc. 47 for the details of the Defendants' response and plan.]  The nine correctional facilities

operated by the Department of Corrections are safely isolating COVID-19 positive patients at each respective facility.[1]

Plaintiffs Kendrick Wilson, Julius Allen, Alfoanso Garner, Ernest Rogers, Bradley Winters, and James Hughes are being detained at a non-DOC facility—East Baton Rouge Prison—which is isolating its own COVID-19 positive offenders.  Plaintiffs Daniel Gumns, Michael Videau, Lionel Tolbert, Ian Cazenave, Otto Barrera, Michael Robinson, Kentrell Parker, Reginald George, and Trevon Wiley are all housed at Louisiana State Penitentiary ("**LSP**").

The Plaintiffs seek a broad and baseless order from this Court to declare the Defendants' COVID-19 policies and practices violative of the Eighth and Fourteenth Amendment "in their totality" and restraining the Defendants from utilizing any part of its response plan at any of the facilities it operates.  [R. Doc. 1 at 71.]  Further, the Plaintiffs seek to impose conditions which may have dire consequences upon non-joined parish correctional facilities.  *Id.*

## II.    LAW AND ARGUMENT

Plaintiffs seek class certification pursuant to Fed. R. Civ. P. 23(a)(1)–(4) and Rule 23(b)(2) or 23(b)(1)(A).  Defendants respectfully submit that Plaintiffs are not entitled to class certification under Fed. R. Civ. P. 23 and, additionally, because this action is moot.

Plaintiffs cannot meet the four requirements of Rule 23(a) for class certification as the proposed class lacks commonality, typicality, adequacy of representation of the class, and inherent conflicts exist within the proposed class. The proposed class will pertain to nine DOC facilities[2] ("**DOC facilities**") and all local parish and municipal jails ("**local jails**") in Louisiana. At present, there are no named plaintiffs from any local jail that is transferring patients to Camp

---

[1] This Court has acknowledged that the Camp J transfer plan "appears to be working" [R. Doc. 57 at 24] and that "the overall success of the plan thus far undermines Plaintiffs' claims." [*Id.* at 30.]

[2] Allen Correctional Center; B.B. Rayburn Correctional Center; David Wade Correctional Center; Dixon Correctional Institute; Elayn Hunt Correctional Center; Louisiana Correctional Institute for Women – Hunt; Louisiana Correctional Institute for Women – Jetson; Louisiana State Penitentiary; and Raymond Laborde Correctional Center.

J, and there are no offenders housed at any DOC facilities other than LSP. Given the undisputed facts presented, the myriad of conflicts involving the proposed class become patently obvious. Plaintiffs cannot adequately represent the interest of prisoners at the DOC facilities that have had zero COVID-19 positive cases. Furthermore, Plaintiffs' attempt to close Camp J at LSP further shows how the interest of the various members of the proposed class diverge. The plan to transfer COVID-19 positive individuals from local jails to Camp J may well be averse to the interest of COVID-19 negative individuals at the local jails where the local jails lack the ability to safely isolate or quarantine COVID-19 positive prisoners. Moreover, individuals at local prisons that test positive may well prefer to transfer to Camp J where appropriate medical monitoring takes place with a staff that has been monitoring COVID-19 patients, as opposed to remaining at local jails with limited resources. The Plaintiffs are advancing their own specific interests viewed through the lens of LSP (e.g., concerns over cross contamination) without consideration that the interest of individuals at other facilities may differ. In addition, the proposed class as to the local jails creates problems of non-joinder of appropriate representatives of those local jails as defendants in this case.

The proposed class fails the requirements of Rule 23(b)(2) as the proposed class is broad with conflicting interests as noted above. Moreover, the request sought is non-specific and overbroad. The proposed class further fails the test of Rule 23(b)(1) as the system-wide relief pits the interests of offenders at different DOC facilities against each other, to say nothing of the interests of those housed at local jails run by non-joined parties. Finally, considering the nature of the COVID-19 crises, this Motion is moot. As discussed in detail below, the motion for class certification should be denied.

## A.  Class Certification Requirements

To obtain class certification, parties must satisfy Rule 23(a)'s four threshold requirements. In addition to each of the Rule 23(a) requirements, one Rule 23(b) requirement must be met for a class to be certified. *Ward v. Hellerstedt*, 2018 WL 5045675 at *5 (5th Cir. 2018); *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). The Plaintiffs, as the parties seeking certification, bear the burden of proof to establish that the proposed class satisfies the requirements of Rule 23. *Ward*, 2018 WL 5045675 at *5; *Fleetwood Enters., Inc.*, 320 F.3d 545, 548 (5th Cir. 2003); *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) ("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc.") (emphasis in original).

The requirements of Rule 23(a) are:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

The Plaintiffs seek certification under Rule 23(b)(2) or 23(b)(1)(A). Thus, if the proposed class satisfies the requirements of Rule 23(a), the Plaintiffs must also establish that either "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding

declaratory relief with respect to the class as a whole" or "prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(2), 23(b)(1)(A); *MD. ex rel. Stukenberg*, 675 F.3d at 837.

It is well-established that "[a] district court must conduct a rigorous analysis of the [R]ule 23 prerequisites before certifying a class." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996) (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)); *MD. ex rel. Stukenberg*, 675 F.3d at 837; *Ward v. Hellerstedt*, 2018 WL 5045675 at *5 (5th Cir. 2018). The Fifth Circuit has construed this directive to require district courts to, *inter alia*, "look beyond the pleadings to 'understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 548 (5th Cir. 2003) (quoting *Castano*, 84 F.3d at 744); *M.D. ex rel. Stukenberg*, 675 F.3d at 837. In light of this imperative, the Fifth Circuit has held that "when certifying a class, a district court must detail with sufficient specificity how the plaintiff has met the requirements of Rule 23." *Ward*, 2018 WL 5045675 at *5 (citing *Vizena v. Union Pac. R.R. Co.*, 360 F.3d 496, 503 (5th Cir. 2004)).

Notably, the obligation of a district court to conduct a rigorous analysis of Rule 23's requirements, as evidenced by written reasons for classification, is not dispensed with by the parties' stipulation to certification or failure to contest one or more of Rule 23's requirements, since "the court [is] bound to conduct its *own* thorough . . . inquiry." *Stirman v. Exxon Corp.*, 280 F.3d 554, 563 n.7 (5th Cir. 2002) (emphasis added). Such independent

analysis is necessary to "protect unknown or unnamed potential class members [who], . . . by definition . . . do not and cannot participate in any stipulations concocted by the named parties." *Id.* However, merits questions may only be considered to the extent "that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466,133 S.Ct. 1184, 185 L.Ed.2d308 (2013).

Plaintiffs do not meet the requirements for class certification under Rule 23(a), 23(b)(2), or 23(b)(1)(A).

## B. Rule 23(a)

### 1. Numerosity

To establish the numerosity requirement of Rule 23(a)(1), Plaintiffs must demonstrate that the class is so numerous as to render joinder of all members impracticable. To satisfy this requirement, Plaintiffs must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved. *See Rex v. Owens ex rel. Okla.*, 585 F.2d 432, 436 (10th Cir. 1978). The question of numerosity is a fact-specific inquiry within the broad discretion of the district court. *See id.* Additionally, courts "need not blindly rely on conclusory allegations which parrot Rule 23 and may consider the legal and factual issues presented by plaintiffs' complaint." *Shook v. El Paso Cty.,* 386 F.3d 963, 968 (10th Cir. 2004). The Plaintiff bears the burden of showing impracticability and mere speculation as to the number of parties involved is not sufficient to satisfy the numerosity requirement. 7A C. Wright and A. Miller, Federal Practice and Procedure: Civil, § 1762 (3rd ed.).

Rule 23(a)(1) "requires examination of the specific facts of each case and

imposes no absolute limitations." *General Tel. Co. of the NW, Inc. v. EEOC,* 446 U.S. 318, 330 (1980). Courts must consider "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiffs claim." *Zeidman v. J Ray McDermott & Co., Inc.,* 651 F.2d 1030, 1038 (5th Cir. 1981). When the court finds that the class members are widely dispersed geographically, then their joinder may be deemed impracticable, whereas, depending on the numbers, class members located in a compact geographic location may not meet the requirement. *See Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980) (numerosity requirement not met where identity and addresses of putative class members were readily ascertainable, and they all lived in a compact geographical area). The fact that an unknown party needs to be represented to have that interest protected does not mean that a class action is proper. Parties with remote or contingent interests in the subject matter of the dispute may have their rights protected by the doctrine of virtual representation, which allows one person whose interests are similar to those of the unascertained absentees to represent the group. *Matthies v. Seymour Manufacturing Company*, 270 F.2d 365, 370–71 (2nd Cir. 1959). That representative, however, should be counted as only one class member for purposes of satisfying Rule 23(a)(1). 7A C. Wright and A. Miller, Federal Practice and Procedure: Civil, § 1762 (3rd ed.).

Plaintiffs do not satisfy the numerosity requirement in this case. The Plaintiffs make the broad claim that the class "consists of" over 46,600 individuals, including approximately 31,600 individuals serving sentences in the DOCs correctional facilities and parish jails, and another approximately 15,000 individuals held pretrial in parish jails." [R. Doc. 25-1 at 14.] This claim, however, does not survive even minimal scrutiny.

First, as to offenders housed at the DOC facilities (plaintiff claims approximately 31,600 such offenders), offenders who test positive for COVID-19 are not being moved to another facility. Instead, those offenders are being isolated at DOC facilities where they are currently housed. The only named plaintiffs in this matter that are in DOC's custody are all being housed at LSP. No named plaintiffs are housed at any of the other eight DOC facilities. As this Court noted, the DOC Defendants are "not charged solely with the protection of inmates at LSP; rather, the DOC is responsible for the care and safety of all prisoners in the custody of the DOC throughout the State of Louisiana." [R. Doc. 57 at 31.]

Second, individuals held in local jails awaiting trial (plaintiffs claim approximately 15,000 such detainees) are not in the custody of DOC. Parish jails are not under the control of the DOC. La. R.S. § 33:4715 provides that "[t]he police jury of each parish shall provide a good and sufficient court-house, with rooms for jurors, and a good and sufficient jail, at such place as they may deem most convenient for the parish at large . . ."

The parish government is charged with a local jail's physical maintenance. La. R.S. § 15:702. The duty to administer and operate a local jail falls on the sheriff of each parish. La. R.S. § 15:704. The office of sheriff is constitutionally created office in Louisiana, existing separately from the parish government. La. Const. Art. 5 § 27; *see Langley v. City of Monroe*, 582 So.2d 367, 368 (La. App. 2nd Cir. 1991) (The parish could not be liable for injuries attributed to the sheriff). "Each sheriff shall be keeper of the public jail of his parish and shall preserve the peace and apprehend public offenders." La. R.S. § 13:5539(C). The entities responsible for those facilities are not before this Honorable Court. See *Wetzel v. St. Tammany Par. Jail*, 610 F. Supp. 2d 545, 549 (E.D. La. 2009). Thus, these local jails have their own plans, and where available, they are isolating and quarantining their own detainees

at the local level.  This is true of East Baton Rouge Prison—the correctional facility housing all of the detainees who are named plaintiffs—which is isolating its own detainees at its facility.[3]  The mere possibility that the class of potential plaintiffs might be so large that joinder would be impracticable is not the same as proof of such numerosity.  *See Anderson v. Donovan*, No. CIV.A. 06-3298, 2011 WL 798118, at *3 (E.D. La. Feb. 28, 2011).

The Plaintiffs' proposed class is designed to be broad and sweeping, but, as a result, the class definition is over inclusive, inappropriate, and not represented by the named plaintiffs as will be further described herein.  As such, the Plaintiffs have not made an appropriate showing regarding numerosity.

### 2.  Commonality

To satisfy Rule 23(a)'s commonality requirement, "the putative class members' claims must depend upon a common contention," which "must be of such a nature that it is capable of class-wide resolution." *Ward v. Hellerstedt*, 2018 WL 5045675 at *6 (5th Cir. 2018) (citing Yates *v. Collier,* 868 F.3d 354, 361 (5th Cir. 2017) and quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011)).  Determining whether such "common contention" is true or false must allow for "resol[ution of] an issue that is central to the validity of each one of the claims in one stroke."  *Id.*

The commonality requirement demands more than the presentation of questions that are common to the class because "any competently crafted class complaint literally raises common questions."  *MD. ex rel. Stukenberg v. Perry,* 675 F.3d 832, 840 (5th Cir. 2012).  Further, the members of a proposed class do not establish that "their claims can productively be litigated at once," merely by alleging a violation of the same legal provision by the same

---

[3] The same is true for Orleans Parish.  Plaintiffs submitted several affidavits by non-named putative plaintiffs who are housed in Orleans Parish, but that facility is not transferring its COVID-19 positive patients to DOC facilities.

defendant. *Id.*

What is significant with respect to a commonality determination is "not the raising of common questions—even in droves—but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Ward*, 2018 WL 5045675 (citing *Yates*, 868 F.3d at 361). Similarly, to establish commonality, the plaintiff(s) must show that "the class members have suffered the same injury." *Id.* (quoting *Wal-Mart*, 564 U.S. at 349, 131 S.Ct. 2541). A key issue is whether dissimilarities between the claims may impede a common resolution. Further, in order to determine whether that standard is met, it is necessary to go behind the pleadings and engage in a rigorous analysis that may require "some overlap with the merits of the plaintiffs underlying claim." *Wal-Mart*, 564 U.S. at 351; *see also* 7A C. Wright and A. Miller, Federal Practice and Procedure: Civil, § 1763 (3rd ed.). Rule 23(a)(2) is not met when the decision regarding the propriety of injunctive or declaratory relief turns on a consideration of the individual circumstances of each class member or when the defendant has not engaged in a common course of conduct toward them. *See, e.g., Phillips v. Sheriff of Cook County*, 828 F.3d 541 (7th Cir. 2016) (pretrial jail detainees' claims of deliberate indifference to their dental care needs, based on delays in receiving face-to-face evaluation by a registered nurse or in receiving "return to clinic" appointments, did not satisfy the commonality requirement for class certification, in a § 1983 action asserting due-process claims against the county and county sheriff as the constitutionality of the delays depended on a variety of individual circumstances which could be answered only by looking at the unique facts of each detainee's case); *see also* 7A C. Wright and A. Miller, Federal Practice and Procedure: Civil, § 1763 (3rd ed.).

A simple review of Plaintiffs' Complaint readily demonstrates that the commonality

requirement is lacking in this case.  The Plaintiffs seek system-wide relief over nine DOC facilities and non-joined local jails, each with a different plan for dealing with COVID-19. Additionally, because the Plaintiffs seek to nullify **all** policies and practices of the Defendants [R. Doc. 1 at 71], each policy and practice—from how health care is provided to how drugs are administrated (and everything in between)—becomes an issue that requires an examination of each individual to determine how each policy or practice impacts each person and the facility at which he is housed.

Further, the Plaintiffs cannot demonstrate that the class members have been harmed in essentially the same way.  The Plaintiffs point to the generalized risks posed by the virus, but rely on individual offenders being older and others being sick.  [*See, e.g.*, R. Doc. 1 at ¶¶ 11, 26, 61, 173, 179, & 180.]  In reality, the Plaintiffs' purported class is not limited to offenders that are elderly or sick, but it extends to all offenders regardless of age or medical infirmity.  Further, Plaintiffs cannot show that all of the  class members' claims depend on a common issue of law or fact whose resolution "will resolve  an issue that is central that to the validity of each one of the class members' claims in one stroke." *MD. ex rel. Stukenberg v. Peny,* 675 F.3d 832, 841 (5th Cir. 2012).  The Plaintiffs focus on the "transfer plan" but fail to note that the nine DOC facilities are not transferring COVID-19 patients.  Restraining all of the policies and practices of the Defendants would impact offenders in different facilities in different ways.  Finally, Plaintiffs' broad assertions of "systematic deficiencies" do not in themselves meet the commonality requirement.  Similar contentions have been rejected by the Fifth Circuit. *See id.*

Recently, a district court in Illinois denied the request of prisoners for class certification in an injunction action related to the risks of COVID-19 for lack of commonality.  In *Money v.*

*Pritzker*, No. 20-CV-2093, 2020 WL 1820660, at *14 (N.D. Ill. Apr. 10, 2020), the court noted that, while there are common questions relevant to the putative class members, none of those questions "is likely to drive the resolution of the case." *Id.* Further, the court noted that public interest analysis that must occur to grant injunctive relief "mandates individualized consideration" of each inmate's particular circumstance. *Id.* Those individual concerns are many and include: (1) the inmate's age and individualized health condition; (2) the inmate's risk of contracting COVID-19; (3) the ability to safely isolate positive inmates at a given facility; and (4) the public's safety.

Those individualized concerns are also present in this case. Because of the lack of uniformity, this action is not appropriate for class certification.

### 3. Typicality and Adequacy of Representation

The Rule 23(a) requirements of typicality and adequacy of representation are "closely related" in that "demanding typicality on the part of the representative helps ensure his adequacy as a representative." *Ward*, 2018 WL 5045675 at *8 (5th Cir. 2018) (citing *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 485 n.27 (5th Cir. 1982)). To demonstrate typicality, the parties seeking certification need not show "a complete identity of claims." *Id.* (citing *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002); *see also* Fed. R. Civ. P. 23(a)(3). Rather, "the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class." *Id.* Moreover, the typicality inquiry is not concerned so much with the "strengths of the named and unnamed plaintiffs' cases" as with the "similarity of legal and remedial theories behind their claims." *Id.* (citing *Ibe v. Jones*, 836 F.3d 516, 528-29 (5th Cir. 2016)).

Adequacy, in the Rule 23(a) context, concerns "class representatives, their counsel,

and the relationship between the two." *Id.* (citing *Stirman,* 280 F.3d at 563). Adequacy encompasses the following three inquiries: "(1) the zeal and competence of the representatives' counsel; (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees; and (3) the risk of conflicts of interest between the named plaintiffs and the class they seek to represent." *Id.* (citing *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017)).

Since "absent class members are conclusively bound by the judgment in any class action brought on their behalf, the court must be especially vigilant to ensure that the due process rights of all class members are safeguarded through adequate representation at all times." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 480 (5th Cir. 2001) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)). Thus, to satisfy the adequacy of representation requirement, "the class representatives [must] possess a sufficient level of knowledge and understanding to be capable of 'controlling' or 'prosecuting' the litigation." *Ibe v. Jones,* 836 F.3d 516, 529 (5th Cir. 2016) (quoting *Berger*, 257 F.3d at 482–83).

A finding of commonality does not excuse a district court from appropriately analyzing whether typicality and adequacy of representation exist. Moreover, such analysis must be conducted with respect to "*the representative parties.*" *See* Fed. R. Civ. P. 23(a) (emphasis added). A district court can only appropriately assess such factors as "the willingness and ability of the representatives to . . . control the litigation and to protect the interests of absentees" with reference to one or more specific claimants, as opposed to any claimant that could fall within the putative class. *Ward*, 2018 WL 5045675 at *9.

Plaintiffs have failed to demonstrate that the named plaintiffs have the same

characteristics of those of the putative class.  The named plaintiffs in this case consist only of offenders at LSP or detainees at East Baton Rouge Prison.  None of the named plaintiffs are housed at any of the other eight DOC facilities or any other local jail in Louisiana.  The Plaintiffs have further failed to join representative defendants of the local jails that they seek to restrain.[4]  As previously discussed, Plaintiffs seek a broad class of all DOC offenders no matter where housed and all non-DOC detainees awaiting trial at local jails.  The Plaintiffs' claims may—and clearly will—conflict with the desires of offenders housed at facilities other than LSP.  A disruption of policies that have clearly worked at David Wade Correction Center, Allen Correctional Center, and Dixon Correctional Institute, for instance, may harm those offenders.  They have no representation in this matter.  Moreover, detainees at local jails would likely prefer that COVID-19 positive patients be moved somewhere where they can be safely housed, without presenting an infection risk to others.

Courts are authorized to strike overbroad class allegations when the putative class members are not similarly situated.  *See Holt v. XTO Energy, Inc.*, No. MO:16-CV-00162-RAJ, 2016 WL 11083342, at \*3 (W.D. Tex. Nov. 10, 2016) (court struck overbroad class allegations when the plaintiffs failed to plead sufficient facts to show that they are similarly situated to all independent contractors employed by Defendant).  The Plaintiffs' proposed class and subclasses would require this Court to determine whether and to what extent a class member has been subject to a policy that is alleged to be unconstitutional.

The named plaintiffs are also advancing personal interests above that of the putative class as clearly shown by the declarations they have furnished in this matter.  The named plaintiffs seek to either keep COVID-19 patients from isolating at Camp J at LSP or to not themselves be transferred to LSP because they would prefer a release or other arrangement.

---

[4] In fact, all of the pre-trial detainee named plaintiffs are at a facility that is not transferring patients to LSP.

Such personal considerations being predominate demonstrate that the Plaintiffs cannot meet their burden of adequacy. *See Anderson v. Donovan*, No. CIV.A. 06-3298, 2011 WL 798118, at *5 (E.D. La. Feb. 28, 2011.)

As for adequacy of representation, proposed class counsel has clearly favored its regular clients at LSP over those in the class at other facilities. This action is an extension of counsel's crusade against medical care at LSP; thus, it is not surprising that they would favor those at LSP over others in the class. If one doubts this contention, one need simply recognize that counsel filed this action in the submitted *Lewis v. Cain*, No. CIV.A. 15–318–SDD–RLB, M.D. La.) case before arriving before the Court in this action.[5]

## C. Rule 23(b)(2)

In addition to satisfying the four Rule 23(a) prerequisites, the party seeking certification must show that one of the three Rule 23(b) requirements is fulfilled. *See* Fed. R. Civ. P. 23(b). Satisfaction of any of the Rule 23(b) requirements is contingent on satisfaction of each of the Rule 23(a) requirements in that a criterion for maintaining a class action under any of the Rule 23(b) requirements is compliance with Rule 23(a). *See id.* (providing that "[a] class action may be maintained if Rule 23(a) is satisfied" and if one of the three Rule 23(b) requirements is met).

Plaintiffs seek class classification pursuant to Rule 23(b)(2) in this case. Rule 23(b)(2) allows a class action to be maintained when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The Fifth Circuit has interpreted this language to create two relevant requirements when a proposed class seeks class-wide injunctive relief: (1) the "class members must have been harmed in

---

[5] *See* R. Doc. 582.

essentially the same way," *MD. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 845 (5th Cir. 2012) (citing *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007) & *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 975 (5th Cir. 2000)), and (2) "the injunctive relief sought must be specific." *Id.* (citing Fed. R. Civ. P. 65(d)); *see also Casa Orlando Apartments, Ltd. v. Fed. Nat 'l Mortg. Ass'n*, 624 F.3d 185, 198 (5th Cir. 2010).

The Supreme Court has stated that "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360, 131 S. Ct. 2541, 2557, 180 L. Ed. 2d 374 (2011) ("The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them."). For a class certified under Rule 23(b)(2), "the relief sought must perforce affect the entire class at once." *Id.* at 361–62.

With respect to the requirement that the injunctive relief sought be specific, the Fifth Circuit has recognized that plaintiffs must "give content to the injunctive relief they seek so that final injunctive relief may be crafted to describe in *reasonable detail* the acts required." *Ward v. Hellerstedt*, 2018 WL 5045675 at *10 (5th Cir. 2018) (citing *Yates v. Collier*, 868 F.3d, 354, 367 (5th Cir. 2018) and *MD. ex rel. Stukenberg v. Perry,* 675 F.3d 832, 848 (5th Cir. 2012)) (emphasis in original). In order to comply with Rule 23(b)(2), plaintiffs must, at a minimum describe in some kind of detail from what actions or inactions of Defendant should be restrained. A general request that Defendant be restrained from violating the Plaintiffs' constitutional rights is insufficient. *See id.*

Plaintiffs' Motion fails under both requirements cited above.  As discussed above, the class members have not been purportedly harmed in "essentially the same way."  In fact, the injunction sought would favor offenders at LSP over the concerns and interests of those housed at other DOC facilities and local jails (who are also putative class members).  The Complaint also asks for restraining every policy and procedure DOC (and non-joined local facility juridical entities) are using to combat COVID-19, while seeking to impose so-called "adequate" policies and procedures.  The Plaintiffs also seek to make non-joined local jails comply with their approved steps. [R. Doc. 1 at 72(e).] These non-specific and contradictory mandates cannot be uniformly imposed by injunctive relief so as to grant all putative class members relief.  Those housed at LSP are the only priority in this case.  Further, this Court has already found that the Plaintiffs are unlikely to succeed on the merits, evidencing a belief at this stage that no one is being harmed under the Eighth and Fourteenth Amendment, much less being harmed in "essentially the same way."  [R. Doc 57 at 9–30.]

Finally, the requested injunctive relief is of the broad and general nature that was expressly proscribed by the Fifth Circuit in its decision in *Ward v. Hellerstedt*, 2018 WL 5045675 (5th Cir. 2018). Plaintiffs have asked this Court to "[e]nter injunctive relief enjoining Defendants and their agents from subjecting Plaintiffs to the illegal and unconstitutional conditions, act, omissions, policies and practices set forth above."  This request is a far cry from the specificity necessary to meet the requirements of Rule 23(b)(2).

**D.  Rule 23(b)(1)(a)**

Rule 23(b)(1) covers cases in which separate actions by or against individual class members would risk establishing "incompatible standards of conduct for the party opposing the class." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614, 117 S. Ct. 2231, 2245, 138 L. Ed. 2d

689 (1997).  Here, proceeding as a class does not alleviate this concern, it exacerbates it.  The system-wide relief pits the interests of offenders at different facilities against each other, to say nothing of the interests of those housed at local jails run by non-joined parties.

Offenders at the nine DOC facilities are benefitting from the Defendants' plan, including reverse isolation, medical isolation, and quarantine.  Enjoining these policies at the nine DOC facilities would harm non-represented offenders.[6]  Enjoining transfers to Camp J from facilities that cannot safely isolate offenders in their existing plant will harm all offenders housed at that non-joined local jails.  The Defendants will be forced to stop policies that are mitigating the effect of COVID-19 to placate a preferred subset of class members at LSP.  The Defendants and non-joined local jails will then incur liability for the ceasing of medically sound mitigation policies.  The Plaintiffs have no response to this very real concern, which the Court has noted.  [R. Doc. 57 at 31.]  The Court should be wary of picking winners and losers in the fight against COVID-19 in Louisiana correctional facilities.

### E.  Mootness

Finally, class certification should be denied as this action is moot.  Mootness in this context is "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)."  *Arizonans For Official English v. Arizona*, 520 U.S. 43, 117 S.Ct. 1055, 1069 n.22, 137 L.Ed.2d 170 (1997) (*quoting United States Parole Comm. v. Geraghty*, 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980).  A controversy is mooted when there are no longer adverse parties with sufficient legal interests to maintain the litigation.  *See Chevron, U.S.A. v. Traillour Oil Co.,* 987 F.2d 1138, 1153 (5th Cir. 1993).  A moot case presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issues it presents.  *See*

---

[6] This Court, after a review of evidence, has noted the "overall success of the plan thus far."  [R. Doc. 30.]

*Hogan v. Mississippi University for Women,* 646 F.2d 1116, 1117 n. 1 (5th Cir. 1981.); see also *Goldin v. Bartholow*, 166 F.3d 710, 717–18 (5th Cir. 1999.)

Mootness can occur when relief is clearly impossible. *See* Injunctions, Declaratory Judgments, Other Specific Relief, 13C Fed. Prac. & Proc. Juris. § 3533.3.1 (3d ed.) "[W]hen it is impossible for a court to grant any effectual relief whatever to the prevailing party," a case is moot and must be dismissed. *Chafin v. Chafin*, 568 U.S. 165, 172, 133 S. Ct. 1017, 1023, 185 L. Ed. 2d 1 (2013.)

Defendants have been responding to the threat of COVID-19 since February. In or about March of 2020, DOC began reverse isolating at-risk offenders in its custody. On March 28, 2020, DOC announced its first offender tested positive for COVID-19. On April 2, 2020, Dr. Morrison approved the first transfer of a COVID-19 positive patient to Camp J at LSP. The DOC Defendants have been responding to and updating their plans continuously to present. The Defendants submit that returning to the status quo would be impossible at this time. The Defendants' medically sound plan has mitigated the impact of COVID-19 on the offenders in its custody. Transfers to Camp J have mitigated issues within non-joined local jails. The Plaintiffs' claims for relief in the form of an injunction cannot turn back the clock on the response. COVID-19 has, unfortunately, infected citizens of Louisiana, including those who are incarcerated. Injunctive relief cannot stop what Mother Nature has wrought. Respectfully, this action is moot.

## III.   **CONCLUSION**

For the foregoing reasons, Defendants respectfully ask the Court to deny Plaintiffs' Motion for Class Certification in this case.

**JEFF LANDRY,**
**ATTORNEY GENERAL**

BUTLER SNOW LLP
445 North Boulevard, Suite 300 (70802)
P. O. Box 2997
Baton Rouge, Louisiana 70821-2997
Telephone: (225) 325-8700
Facsimile: (225) 325-8800

By: */s/ Randal J. Robert* _____
      Randal J. Robert (#21840)
      Connell L. Archey (#20086)
      Julie M. McCall (#29992)
      Keith J. Fernandez (#33124)
      Allena W. McCain (#38830)
*Special Assistant Attorneys General*
      Email: randy.robert@butlersnow.com
            connell.archey@butlersnow.com
            julie.mccall@butlersnow.com
            keith.fernandez@butlersnow.com
            allena.mccain@butlersnow.com

Counsel for Defendants the Louisiana Department of Public Safety and Corrections, Sec. James Le Blanc, and Dr. John Morrison

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of May 2020, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

        _____/s/ Randal J. Robert_____
             Randal J. Robert

53024468.v1